**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 99-30608

FORD MOTOR CREDIT CO.,
*Plaintiff-Appellant,*

v.

ALEXIS V. LEWIS; ARTHUR C. LEWIS, III; PATRICIA ANN VOORHIES LEWIS;
MARGUERITE LEWIS HAWKING,
*Defendants-Appellees.*

Appeal from the United States District Court
for the Middle District of Louisiana
(98-CV-743)

September 8, 2000

Before KING, Chief Judge, and REYNALDO G. GARZA and PARKER, Circuit Judges.

PER CURIAM:[1]

Ford Motor Credit Company appeals the federal district court's stay of their declaratory

judgment action. For the reasons stated below, we affirm.

**1      Factual and Procedural Background**

On November 10, 1962, Ida Watson Lewis created four separate trusts (collectively

referred to hereinafter as "Trusts") for the benefit of her grandchildren, Alexis Voorhies Lewis,

---

[1]Pursuant to 5th Cir. R. 47.5, the Court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5th Cir. R.
47.5.4.

Arthur Cullen Lewis, III, Patricia Ann Voorhies Lewis, and Marguerite Brown Lewis.[2] Ida Watson Lewis named her son, the beneficiaries' father, Arthur Cullen Lewis, Jr. (hereinafter referred to as "Mr. Lewis") the Trusts' trustee. Mr. Lewis managed the four separate trusts as though they were one. The Trusts collectively held equitable title to the Provincial North, the Provincial South, and the Savoy Plaza Apartment Complexes. The trust instruments empowered Mr. Lewis to borrow money for the Trusts and to secure such loans with the Trusts' assets.

Mr. Lewis was a real estate developer in Baton Rouge, Louisiana. By August 1980, Mr. Lewis was personally indebted to Fidelity National Bank of Baton Rouge (hereinafter referred to as "Fidelity") for approximately $2.3 million. Fidelity informed Mr. Lewis that it wished that he satisfy his outstanding personal debt.

In October 1980, Mr. Lewis, as trustee for the Trusts, contacted Ford Motor Credit Company (hereinafter referred to as "Ford") seeking a loan for approximately $2.3 million on behalf of the Trusts. Ford is a Delaware corporation doing business in Louisiana. Ford performed its due diligence, and proposed to lend the Trusts $2.23 million.

On December 29, 1980, Ford entered into an agreement with Mr. Lewis, as trustee for the Trusts, to lend the Trusts $2.23 million (hereinafter referred to as "Ford Loan"). The Ford Loan was secured by collateral mortgages on the Provincial North, the Provincial South, and the Savoy Plaza Apartment Complexes (hereinafter referred to as "Secured Property"). The Ford Loan was an *in rem* obligation. Ford initially funded the Ford Loan by transferring $1.81 million to Mr. Lewis's personal account at Fidelity rather than the Trusts' accounts.

Mr. Lewis, personally, borrowed an additional $500,000 from Capital Bank and Trust of

---

[2]Marguerite Brown Lewis is now Marguerite Lewis Hawking.

Baton Rouge (hereinafter referred to as "Capital"). This second loan was secured by the withheld Ford funds. The Capital loan was funded by transferring $500,000 to Mr. Lewis's personal account at Fidelity. Upon receipt of Ford's $1.81 million and Capital's $500,000, Mr. Lewis used both the Ford and Capital funds to satisfy his personal debt to Fidelity.

In May 1981, Ford completed funding the $2.23 million loan by transferring the remaining $420,000 to Mr. Lewis's personal account at Fidelity. Mr. Lewis, in turn, used the $420,000 to satisfy his personal debt to Capital. Mr. Lewis then used the income derived from the Secured Property to make principal and interest payments on the Ford loan.

On October 7, 1982, Mr. Lewis, as trustee for the Trusts, transferred the Trusts' interests in the Secured Property to Consolidated Lewis Investment Corporation–Limited Partnership (hereinafter referred to as "Lewis Limited Partnership"). The Secured Property was transferred subject to Ford's interest. In exchange for the transfer, each of the individual Trusts received an interest in the Lewis Limited Partnership. The Lewis Limited Partnership's general partner was a Louisiana corporation. Mr. Lewis was the president of that Louisiana corporation. In Mr. Lewis's capacity as president of the Louisiana corporation, he had virtually the same control over the Secured Property as when he was trustee.

After the transfer, the Lewis Limited Partnership made all principal and interest payments on the Ford Loan. In June 1983, the Lewis Limited Partnership repaid the loan in full. Ford then released its mortgages on the Secured Property.

On July 23, 1985, Mr. Lewis died. Patricia Ann Voorhies Lewis, Mr. Lewis's wife, succeeded him as trustee of the Trusts. On May 7, 1986, Fidelity filed a collection action in Louisiana's 19th Judicial District Court against the Lewis Limited Partnership and Alexis

3

Voorhies Lewis, Arthur Cullen Lewis, III, Patricia Ann Lewis, and Marguerite Lewis Hawking (collectively referred to hereinafter as the "Lewis Children"). Fidelity brought suit to collect outstanding debts that the Lewis Limited Partnership had incurred, guaranteed or succeeded to. On August 20, 1986, the Lewis Limited Partnership filed for Chapter 11 bankruptcy protection.

On September 25, 1986, Patricia Ann Voorhies Lewis died. Pursuant to the trust instruments, the Trusts terminated upon Mrs. Lewis's death. The Trusts' property was distributed to the Lewis Children. Thereby each of the Lewis Children became an individual partner in the Lewis Limited Partnership.

On December 30, 1987, the Lewis Limited Partnership filed a reconventional demand and cross-claim against Mr. Lewis, Ford, and Hibernia National Bank (hereinafter referred to as "Hibernia") in the Louisiana state court collection action. Hibernia is Fidelity's successor. The Lewis Limited Partnership alleged that Fidelity pressured Mr. Lewis into borrowing the $2.23 million from Ford to pay Mr. Lewis's personal debts to Fidelity. The Lewis Limited Partnership further alleged that Ford conspired with Mr. Lewis to misappropriate the Ford Loan proceeds, that Ford knew that Mr. Lewis borrowed the $2.23 million in his capacity as the Trusts' trustee, but was going to use the $2.23 million to meet his personal obligation to Fidelity. The Lewis Limited Partnership sought to recover the $2.23 million paid to Ford, alleging that the repayment of the $2.23 million was a "payment of a thing not due" under the Louisiana Civil Code.

On January 29, 1988 and February 19, 1988, pursuant to 28 U.S.C. § 1452(a), Hibernia and Ford respectively removed the Louisiana state court action to federal district court. The federal district court then transferred the action to the bankruptcy court overseeing the Lewis Limited Partnership's Chapter 11 bankruptcy. During the pendency of the bankruptcy

4

proceeding, the Lewis Limited Partnership and the Lewis Children settled their claims against Fidelity and Hibernia, as Fidelity's successor.

After settling their claims with Fidelity and Hibernia, Marguerite Lewis Hawking and Patricia Lewis filed separate actions against Ford in Louisiana's 19th and 24th Judicial District Courts, respectively. They alleged that Ford conspired with Mr. Lewis to misappropriate the Ford Loan proceeds, that Ford knew that Mr. Lewis borrowed the $2.23 million in his capacity as the Trusts' trustee, but was going to use the $2.23 million to meet his personal obligation to Fidelity. Ford removed Marguerite Lewis Hawking's action to federal district court. The federal district court then transferred the action to the bankruptcy court overseeing the Lewis Limited Partnership's Chapter 11 bankruptcy. Patricia Lewis dismissed her Louisiana state court action against Ford.

On July 9, 1997, Ford then filed a counterclaim against the Lewis Limited Partnership and the Lewis Children in the bankruptcy court seeking a declaratory judgment decreeing that the claims against it were not legally viable, and in the alternative, if the claims against it were legally viable, a ruling on who, between the Lewis Limited Partnership and the Lewis Children, owned the cause of action. Ford filed a motion for summary judgment on its counterclaim with the bankruptcy court.

On December 22, 1997, the bankruptcy court ruled that if any cause of action against Ford existed, it consisted of two separate claims: first, the Lewis Children's claims for any damages incurred prior to October 7, 1982, as beneficiaries of the Trusts, and second, the Lewis Limited Partnership's claim for any damages incurred from October 7, 1982 forward. The bankruptcy court severed the Lewis Children's claims, the pre-October 7, 1982 claims, from the Lewis

5

Limited Partnership's claim, the post-October 7, 1982 claims. The bankruptcy court then remanded the Lewis Children's claims against Ford back to state court from which they arose, Louisiana's 19th Judicial District Court. With regards to the Lewis Limited Partnership's claim, the bankruptcy court recommended to the district court that it grant Ford's motion for summary judgment and dismiss the Lewis Limited Partnership's claim. On August 11, 1998, the federal district court entered a judgment affirming the bankruptcy court's recommendation and granted Ford's motion for summary judgment with regards to the Lewis Limited Partnership's claim and affirmed the remand of the Lewis Children's claims back to the state court from which they arose. After the federal district court affirmed the bankruptcy court, Ford on August 24, 1998, again filed a complaint for declaratory judgment in federal district court against the Lewis Children. Ford again sought a decree that the Lewis Children did not have legally viable claims. In response, Alexis Voorhies Lewis and Arthur Cullen Lewis, III filed a motion to dismiss Ford's complaint based on abstention. Marguerite Lewis Hawking filed a motion to dismiss or in the alternative to stay. Patricia Ann Voohires Lewis did not make an appearance.

During the interim, the Lewis Limited Partnership appealed the August 11, 1998 summary judgment and Ford cross-appealed the remand of the Lewis Children's claims. On May 4, 2000 a panel of this court affirmed the district court's grant of the August 11, 1998 summary judgment with regards to the Lewis Limited Partnership's claim and refused, for lack of appellate jurisdiction, to hear Ford's appeal of the remand of the Lewis Children's claims back to the state court from which they arose. *See Hawking v. Ford Motor Credit Co.,* 210 F.3d 540, 550 (5th Cir. 2000).

On May 5, 1999, the federal district court entered an order denying Alexis Voorhies

6

Lewis's, Arthur Cullen Lewis, III's, and Marguerite Lewis Hawking's motions to dismiss Ford's August 24, 1998 complaint for declaratory judgment, but granted Marguerite Lewis Hawking's motion to stay the proceedings pending the resolution of the Lewis Children's remanded state court claims which arose out of the bankruptcy court's December 22, 1997 ruling. On June 2, 1999, Ford perfected its notice of appeal from the May 5, 1999 order which stayed its August 24, 1998 declaratory judgment action. It is the propriety of the May 5, 1999 stay that we address today.

**2.      Discussion**

The appellant, Ford, argues that under 28 U.S.C. § 1291 this Court has jurisdiction over this appeal. Ford further contends that the federal district court abused its discretion when it stayed Ford's August 24, 1998 declaratory judgment action pending the resolution of the Lewis Children's remanded state court claims. We hold that this Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, and that the federal district court properly stayed this matter pending the resolution of the Lewis Children's remanded state court claims.

**2.1      This Court Has Jurisdiction over this Appeal Pursuant to 28 U.S.C. § 1291**

Since we find that there is jurisdiction pursuant to 28 U.S.C. § 1291, we will not address Ford's argument that jurisdiction exists because of the collateral order doctrine. Generally, an order granting a stay of proceeding is not considered a final judgment. *See Kershaw v. Shalala,* 9 F.3d 11, 14 (5th Cir. 1993). Thus, an order granting a stay of proceeding is usually not appealable pursuant to 28 U.S.C. § 1291. *See id.* at 14. However, if the resolution of a pending state court proceeding will resolve all of the federal suit's issues, thus having a *res judicata* effect on the stayed federal proceeding, the order granting the stay of proceeding is considered a final

7

judgment for purposes of 28 U.S.C. § 1291. *See Granite State Ins. Co. v. Tandy Corp.,* 986 F.2d 94, 95 (5th Cir. 1992), *cert. dismissed,* 507 U.S. 1026, 113 S. Ct. 1836, 123 L. Ed. 2d 463 (1993). Thus this order is appealable pursuant to 28 U.S.C. § 1291.

In the instant case*,* the federal district court stayed Ford's August 24, 1998 declaratory judgment action pending the resolution of the Lewis Children's remanded state court claims. The state court proceeding will determine whether the Lewis Children have legally viable claims against Ford. In Ford's August 24, 1998 complaint for declaratory judgment, Ford solely seeks a decree that the Lewis Children's claims against it are not legally viable. Thus, the state court proceeding will resolve the declaratory judgment action's only issue. Since the state court proceeding will resolve the declaratory judgment action's only issue, the order granting the stay of proceeding is considered a final judgment for purposes of 28 U.S.C. § 1291. Therefore, we find that jurisdiction exists pursuant to 28 U.S.C. § 1291.

**2.2    The Federal District Court Properly Stayed Ford's Declaratory Judgment Action Pending the Resolution of the Remanded State Court Claims**

A district court's decision to stay a declaratory judgment action is reviewed for an abuse of discretion. *See Granite State Ins. Co.,* 986 F.2d at 96; *Mission Ins. Co. v. Puritan Fashions Corp.,* 706 F.2d 599, 601 (5th Cir. 1983). A district court may not stay a declaratory judgment action on the basis of a whim or personal disinclination. *See Granite State Ins. Co.,* 986 F.2d at 96; *Hollis v. Itawamba County Loans,* 657 F.2d 746, 750 (5th Cir. 1981). It **may** stay a declaratory judgment action when there is a pending state court action in which all of the matters in controversy may be fully litigated. *See Granite State Ins. Co.,* 986 F.2d at 96 (emphasis added); *Rowan Companies Inc. v. Griffin,* 876 F.2d 26, 28 (5th Cir. 1989).

8

In the instant case, the federal district court stayed Ford's August 24, 1998 declaratory judgment action pending the resolution of the Lewis Children's remanded state court claims. In the declaratory action, Ford and the Lewis Children are adversaries. In the state court proceeding Ford and the Lewis Children are adversaries. In Ford's August 24, 1998 complaint for declaratory judgment, Ford solely seeks a decree that the Lewis Children's claims against it are not legally viable. The state court proceeding will determine whether the Lewis Children have any legally viable claims. Thus, the state court proceeding provides a venue where all of the declaratory judgment action's matters in controversy will be fully litigated. Moreover, it is doubtful that Ford or the Lewis Children will litigate any less energetically in state court than in federal court. Since the state court proceeding provides a venue where all of the declaratory judgment action's matters in controversy will be fully litigated, the district court was within its discretion to stay Ford's declaratory judgment action. Accordingly, we AFFIRM the district court's judgment.